**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TYMARIEN KENTA MCDOWELL,<br><br>Defendant. | Cause No. CR 26-19-GF-BMM<br><br>**ORDER ON FORFEITURE** |

## INTRODUCTION

The United States of America (the "Government") moved this Court to determine whether $10,000 seized from Tymarien Kenta McDowell's ("McDowell") home is subject to forfeiture under 21 U.S.C. § 853(a). The Court conducted a hearing on August 27, 2026, at 2:30 p.m. (Doc. 36.) The Parties discussed whether $10,000 is subject to forfeiture. The Government seeks forfeiture under 21 U.S.C. § 853(a)(1) & (2) because the $10,000 derives from McDowell's drug offense. McDowell argues the $10,000 derives from the sale of one of his vehicles that occurred before he was indicted and further argues his employment is traceable to the $10,000.

## BACKGROUND

McDowell pleaded guilty to Count I of the Indictment and admitted the forfeiture allegation with exception to $10,000 cash. (Doc. 26. at 5.) McDowell's indictment included forfeiture allegations for (1) any property constituting and derived from any proceeds obtained, directly and indirectly, as a result of the commission of said offense; (2) any property used and intended to be used in any manner and part, to commit, and facilitate the commission of, said offense. (Doc. 10.) *See* 21 U.S.C. § 853(a)(1) & (2). The relevant offense was the violation of 21 U.S.C. § 841(a) & 846, attempted possession with the intent to distribute cocaine. McDowell agreed to forfeit guns seized from his home but argues he should not have to forfeit $10,000 cash. (*Id.*)

## LEGAL STANDARD

The Government relies on 21 U.S.C. § 853(d), which provides a rebuttable presumption that any property of any person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this is section if the United States establishes the following by a preponderance of the evidence: (1) that property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and (2) there was no likely source for such property other than the violation of this subchapter or subchapter II. *See* 21 U.S.C. § 853(d). The Government informed the

Court at the hearing that this statute still applies regardless of whether the defendant enters a guilty plea. The Court will discuss each prong of the statute.

## DISCUSSION

### I. The timing of Acquisition of the Property.

Officers were tipped of a suspicious packages stopped at the United States Post Office in Billings, Montana. (*Id*. at 1.) The officers obtained a search warrant for the packages and found two kilograms of cocaine inside the packages. (*Id*. at 2.) The packages were addressed to a resident at a group home owned by Aware. (*Id*.) The officers organized a controlled pickup of the package. (*Id*.) Two occupants in a Chrysler van registered to Aware came to pick up the packages. (*Id*. at 3.) The male driving the van was identified as McDowell. (*Id*.) The male in the backseat was nonverbal and his name was listed on the packages. (*Id*.)

Officers next obtained a search warrant for McDowell's residence. (*Id*.) The Great Falls Police Department seized firearms, ammunition, a clear bag of white powdery which later tested positive as cocaine, and $10,000 cash from McDowell's residence. (Doc. 34-1 at 5.) Officers found $10,000 bundled together by rubber bands. The Government argues the quantity and manner in which it was found makes it likely the money stems from McDowell's offense.

The first tip of the activity at the Billings Post Office occurred around February 6, 2025. (*Id*. at 1.) Officers searched McDowell's home and seized cash

about 4 days later. (*Id*. at 3.) The proximity in time between the seizure and the reports of suspicious activity show that the Government meets their burden under the first prong of 21 U.S.C. § 853(d).

## II. Other Source for $10,000.

McDowell argues that shortly before he was charged with the crimes herein, he sold a car for $10,000, had a legitimate job that paid him $24 per hour, and sold clothing. (Doc. 32 at 3.) McDowell provided documents evidencing the sale of his car. (Doc. 35-1 at 1-11.) The bill of sale is dated April 15, 2026, about 2 months after the seizure of the $10,000. (*Id*. at 3.) The registration card for the sale of the vehicle was filed about three weeks after the seizure of McDowell's cash. (*Id*. at 1.) McDowell explained at the hearing that transactions for the sale of vehicles typically take a few weeks and the paperwork is not instantly filed.

The Government also pointed out that the VIN numbers do not match on the bill of sale and the registration card. The Court recognizes cars manufactured after 1981 contain 17 numbers/letters in their VIN numbers. *See* (https://www.autocheck.com/vehiclehistory/vin-basics.) The bill of sale contains 551 at the end of the number, and the registration card contains 376 at the end of the number. (*Id*. at 1 & 3.) The VIN number on the registration card matches the Montana motor vehicle report documents (other than the 1 that appears to be cut off.) (*Id*. at 1, 5.) The VIN number on the bill of sale matches up until the last three

digits. The VIN number on the bill of sale is also made up of less than 17 digits. (*Id*. at 3.) All documents describe the vehicle as a 2013 vehicle. The most likely conclusion is that there was a clerical error when entering the VIN number on the bill of sale. The Court finds at least some proceeds of the sale of McDowell's vehicle meets the standard for another likely source of income, however, not in the full amount of $10,000.

McDowell also held a job at Aware making about $24 dollars an hour. (*Id*. at 4.) McDowell's check dated March 26, 2026, shows he worked 136.89 hours in 2026. (*Id*.) McDowell worked full-time at this job since November 2023. (PSR at ¶ 84.) McDowell has not informed the Court of his exact net payment each check. The check offered by McDowell is not representative, as it includes vacation and PTO paid out on the voucher. (*See* Doc. 35-1 at 4.) The Court finds it reasonable that one earning $24 an hour would net about $700-800 per week. McDowell's monthly income from his full-time job is a likely source of income. *See* 21 U.S.C. § 853(d).

For these reasons, the Court finds that the Government has met its burden showing that $7,000 of the $10,000 seized was acquired through means of the distribution of cocaine. The Court also finds McDowell rebutted the presumption that the entire $10,000 is subject to forfeiture. McDowell earned around $2,800-$3,200 a month and alleges he sold his vehicle right before his arrest. They both

qualify as other likely sources of income, and $3,000 is around his monthly pay plus some proceeds of the sale of his car.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:**

- that $3,000 of the $10,000 cash is not subject to forfeiture and shall be returned to McDowell by October 2, 2026, at 5 P.M.
- **IT IS FURTHER ORDERED** the Government must certify compliance with this order by filing on the docket.

**DATED** this 2nd day of September, 2026.

Brian Morris, Chief District Judge
United States District Court